37 C.C.P.A. (Patents)

**Application of BARRETT et al.**
**Patent Appeals No. 5657.**

United States Court of Customs and Patent Appeals.

April 3, 1950.

H. F. Woodward, Washington, D. C., for appellants.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Judge.

The Board of Appeals of the United States Patent Office affirmed the final rejection by the Primary Examiner of claims 25 to 29, inclusive, of a patent application, serial No. 511,754, filed November 24, 1943, "For Process of Coating Paper," as being unpatentable over the cited prior art, and further rejecting claims 25 and 29 on the ground that they are indefinite and that the "whereby" clause therein is misleading. Other rejections made by the examiner were reversed by the board. Five claims were allowed. From the decision of the Board of Appeals, this appeal was taken.

In the brief of appellants, claim 26 is quoted as illustrative of the issues involved and reads as follows: "26. A method of coating a traveling web of paper with a mineral-adhesive coating composition having a solids content in excess of 61% solids, comprising maintaining a body of coating material having a head above a lower nip formed by a moving, resilient and non-absorbent applying surface, and a moving doctoring surface whereby an excess of coating material is maintained at said lower nip, applying coating to the applying surface, removing a portion of the coating material on the applying surface by the moving doctoring surface, moving in the opposite direction thereto and at a speed less than that of the speed of the applying surface, continuously cleaning the doctoring surface, bringing a moving web of paper into contact with the applying surface and subjecting the web in contact with the coating on the applying surface to rolling pressure."

The art relied upon is:

Massey          1,921,368 August 8, 1933.
Bradner         1,933,963 November 7, 1933.
Massey et al.   2,105,981 January 18, 1938.
Fanselow        2,293,125 August 18, 1942.
Harrigan        2,293,690 August 18, 1942.

The invention, as may be observed from a reading of the quoted claim, is concerned with a paper coating method by means of which it is said that the coating has a superior surface in flatness, smoothness and freedom from imperfections. A web of raw paper stock is employed in the process, and the ingredients contained in the coating mixture may include a mineral pigment, such as clay, calcium carbonate, zinc sulphide or titanium oxide, with a binder of starch, protein, casein, glue, or other suitable material, all in an aqueous dispersion.

It is stated in the application that prior to appellants' invention that when coated paper was made by directly applying a coating liquid, irregularities of the coating material appeared on the paper after drying, unless special precautions were taken and that in much of the prior art practice, the irregularities were removed from the coating by the use of brushes, doctor blades or by means of rolls. Those aids, according to the application, are cumbersome and responsible for a comparatively low rate of production.

In appellants' invention, a predetermined amount of coating material is applied to the traveling web of paper so that an even coating is produced, rendering the use of subsequent smoothing devices unnecessary.

The coating colors used by appellants, which seemingly is the term applied to the mineral contents of coating mixtures, possesses "high solids content," and is applied to a fast moving web of paper. It is stated in the application that all starch mineral coating colors possess thixotrophic properties, which properties are said to be such that the viscosity thereof becomes lower as the speed of agitation in the solution is increased, and that when the agitation is stopped the solution gradually sets into a firm jell.

In the process defined by the involved claims, a pond or excess of coating material is maintained against the lower nip, between the coating roll and the web roll. In another feature of the process, the coating material is applied to the moving web of paper and after the coating is partially set, the drying is completed by contacting the coated web with a felted sheet moving at the same speed as the web. The allowed claims are for the latter feature.

The Massey patent, 1,921,368, relates to a process of coating paper having desirable characteristics for printing. It is stated in the patent that the coating material may be maintained in the fountain under either superatmospheric or atmospheric pressure, and may be transferred from the fountain by gravity. The coating material may comprise, among other things, starch and clay, and the proportion of liquid to soluable material ranges in the approximate vicinity of 50%, more or less.

The Massey et al. patent, 2,105,981, relates to a device adaptable for carrying out the process described in the Massey patent, 1,921,368.

The patent to Bradner is concerned with a process of manufacturing mineral coated paper, and an apparatus for carrying out the process. The coating material comprises such substances as clay, satin white, blanc fixé and at least two-thirds by weight on the dry basis of mineral pigment, and not more than one-third by weight of adhesives, such as casein, starch, glue and the like. There is shown on a graph, which is one of the drawings of the patent, a process for a coating operation, using a mineral coating composition of casein, clay and water in which the composition contains about 44% solids.

The method of the Bradner patent discloses the use of a substantially dry web of paper and a body of coating material in the nip between an applicator roll and a doctor roll, with a head fountain or well above the nip between the two rolls for the purpose of maintaining an excess of the coating material at the nip. The surface of the applicator roll is made of steel. The coating material of the patent on the applicator roll is smoothed and partially removed by means of a doctor roll, which moves in an opposite direction to the movement of the applicator roll and at a lesser speed. The coating material is placed on the paper in a wiping contact.

The Massey, Fanselow and Harrigan patents were cited principally as disclosing the "well known" practice of applying coating material to a web of paper by rolling pressure and with the aid of a backing roll. The coating material employed in the Har-rigan patent may contain from 33% to 66% of solids. Ink is the material disclosed in the patent, and is referred to as "a highly viscous aqueous coating composition."

The Bradner patent is the principal reference relied upon below. It was held in the decision of the board that claims 25, 28 and 29 are not distinguishable over that patent, which discloses, as hereinbefore mentioned, a coating composition of 44% solids. That percentage, the board considered sufficient to meet the "high solids content" of those claims. Counsel for appellants earnestly argues that such percentage of solids can not be termed a "high solids content" in the Bradner mixture. He stated in his brief that those skilled in the coating paper art are aware that solid concentrations are roughly placed in two groups, one of which is "low solids" and the other "high solids," calling attention to a publication by the Technical Association of the Pulp and Paper Industry, 1948, Monogram Series No. 7, entitled, Pigments for Paper Coating, at page 64. He quoted from that publication to the effect that there is more or less overlapping between the groups of the "low solids" and "high solids," and that generally speaking in the low solids colors, the solids content may range from as low as 20% to as high as 50%, and that the high solids colors have a solids content ranging from 50% to 70%. By reason of that quotation, counsel for appellants contends that the term "high solids content" which appears in the claims definitely indicates to those who are skilled in the pertinent art a solids content in excess of 50% of the coating mixture. In view of the rather indeterminate line of demarcation appearing in the quotation upon which counsel relies—in which quotation it is noted that there is "more or less overlapping" between the two groups of solids, as well as that the solid concentrations are "roughly" placed in two groups—it seems to us, as was held below, that in providing a coating possessing a "high solids content" appellants should have presented some "criterion to determine what is high."

The composition of the coating material of the Bradner patent may be formed from casein or starch as an adhesive and clay as

one of the mineral pigments. As has heretofore been noted, appellants state in their application that all starch mineral coating colors show thixotropic properties, and that mineral-adhesive coating compositions are thixotropic to a degree. Therefore, we cannot agree with counsel for appellants in his assertion that the coating material of the Bradner patent does not show thixotropic properties. Furthermore, while it is stated in claims 26 and 27 that the solids content of the coating material is in excess of 61%, such percentage is within the range disclosed in the Harrigan patent. None of the other involved claims set out any proportion of solids content. In our opinion, the composition defined in claims 26 and 27 with respect to solids content is clearly met by that disclosed in the Harrigan patent, and therefore we do not see how those claims could properly be held to be patentable.

Claims 26, 27 and 29 recite that the doctor roll has a lower peripheral speed than that of the applicator roll. Such diversity of speed is disclosed in the Bradner patent. Claims 26 to 29, inclusive, provide for continuous cleaning of the doctor roll. Such cleaning is disclosed in the Bradner patent.

The board stated that the Bradner patent does not disclose a backing or drying roll as a moving surface. However, it is noted that such drying means is a common expedient when coating material is applied by rolling pressure, as disclosed in the Fanselow, Massey and Harrigan references, and therefore is seems to us, as it did to the board, to be merely a matter of choice to employ a backing or drying roll in the process of coating paper.

Claim 29 calls for a web speed in excess of 800 feet per minute. We agree with the board in its statement that, "The selection of a desirable operational speed does not involve invention."

Claim 25 calls for a "resilient" surface on the applying roll. The applicator roll of the Bradner patent may be made of steel, and the board in its decision stated that a roll made of such material is resilient. Counsel for appellants challenges that statement. However, whether or not the board erred in that respect is immaterial for the reason that the patent to Harrigan provides for such surface, and therefore applicator rolls having a resilient surface are not new.

Since we are of opinion that the board did not err in rejecting the involved claims on the prior art, it is not necessary to discuss the further rejection of claims 25 and 29.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.